**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| A.H., a minor, by and through her Next Friend, SAVANNAH COBB, B.H., a minor, by and through his Next Friend, NICOLE SMITH and CATLIN DICKERSON, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Case No. 4:16-CV-509 |
| ST. LOUIS COUNTY, MISSOURI, | ) ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |

<u>**PLAINTIFFS' COMPLAINT**</u>

COMES NOW Plaintiffs A.H., B.H. and Catlin Dickerson (hereinafter the "Plaintiffs"), by and through their attorneys, and for their Complaint against Defendant St. Louis County, Missouri (hereinafter "Defendant St. Louis County") and respectfully states to this Honorable Court the following:

1.     This is a civil action arising under 42 U.S.C. § 12101 *et seq*. and 29 U.S.C. § 701 *et seq*. for deprivations of Decedent Jereme M. Hartwig's ("Decedent Hartwig") rights.

2.     Plaintiff A.H. is a minor and daughter of Decedent Hartwig and A.H.'s natural mother is Savannah Cobb.

3.     Plaintiff B.H. is a minor and son of Decedent Hartwig and B.H.'s natural mother is Nicole Smith.

4.     Plaintiff Catlin Dickerson is the daughter of Decedent Hartwig.

5.     Missouri law requires that, if a petition to open an estate is to be filed, it must be filed within one year after the decedent's death[1].

---

[1] *See* RSMo. § 473.020.2.

6.      No estate was opened within one year after Decedent Hartwig's death.

7.      Plaintiffs A.H., B.H. and Catlin Dickerson filed a Petition for Determination of Heirship pursuant to Missouri Revised Statute § 473.663[2].

8.      The St. Louis County Probate Court entered a Judgment Determining Heirs on April 4, 2016 finding Plaintiffs A.H., B.H. and Catlin Dickerson to be Jereme M. Hartwig's heirs. (*See Plaintiffs' Exhibit 1 attached hereto*).

9.      Plaintiffs A.H., B.H. and Catlin Dickerson, Decedent Hartwig's natural children, bring this case as heirs of the estate of Decedent Hartwig[3].

## JURISDICTION

10.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and § 1341(3).

## VENUE

11.      Venue is proper under 28 U.S.C. § 1391(b).

12.      Defendant St. Louis County is a political subdivision of the State of Missouri and is a public entity.

## FACTUAL BACKGROUND

13.      On February 5, 2013, Decedent Hartwig was incarcerated in the St. Louis County Jail located at 100 S. Central Ave., St. Louis, MO 63105.

14.      On February 5, 2013, Decedent Hartwig was incarcerated on a probation violation relating to his criminal non-support case.

15.      On February 5, 2013, Decedent Hartwig hanged himself inside of his cell by using a

---

[2] When no estate is opened within a year of a decedent's death, the decedent's heirs may file a petition in the probate court, "which would be of proper venue for the administration of the estate of such decedent to determine the heirs of the decedent at the date of the decedent's death and their respective interests or interests as heirs in the estate." *See* RSMo. § 473.663.1.
[3] *See* Heidbreder v. Tambke, 284 S.W.3d 740, 742-46 (Mo. App. W.D. 2009).

2

bed sheet.

16.     On February 5, 2013, Paramedics attempted to resuscitate Decedent Hartwig and Decedent Hartwig was transported to St. Mary's Hospital.

17.     As a result of Decedent Hartwig's hanging, he suffered cardiac arrest, brain, kidney and liver damage and later died from his suicidal hanging.

18.     One to two weeks prior to Decedent Hartwig's hanging, there was an incident inside the St. Louis County Jail where Decedent Hartwig caused harm to himself by hitting himself over the head with a telephone, whereas stitches were required to treat the self-inflicted head injury.

19.     Decedent Hartwig made a specific request to speak to a mental health professional.

20.     Psychologist Wendy Magnoli ("Magnoli") thereafter met with Decedent Hartwig.

21.     Decedent Hartwig expressed his thoughts, feelings and concerns to Magnoli, which consisted of numerous warning signs of Decedent Hartwig's risk of suicide.

22.     Despite this, Magnoli recommended that Decedent Hartwig be placed on Precautionary Suicide Watch.

23.     Following the self-inflicted head injury incident and meeting with Magnoli, Decedent Hartwig was placed on Precautionary Suicide Watch.

24.     Decedent Hartwig was thereafter confined under no suicide preventive measures, in a cell that contained known instrumentalities for suicide, such as clothing and sheets, and various means and anchor points from which to tie and suspend those items.

25.     Under Precautionary Suicide Watch, Decedent Hartwig was placed in general population, but assigned a cellmate, who was free to leave the cell as he pleased.

26.     On February 5, 2013, prior to hanging himself, Decedent Hartwig made six (6) telephone calls from inside the St. Louis County Jail.

27.     On February 5, 2013, the six (6) telephone calls made by Decedent Hartwig from inside the St. Louis County Jail were subject to monitoring by corrections officers and/or staff of St. Louis County Department of Justice Services.

28.     On February 5, 2013, the six (6) telephone calls made by Decedent Hartwig from inside the St. Louis County Jail were recorded.

29.     On February 5, 2013, Decedent Hartwig made one phone call to his mother, Brenda Parrish.

30.     On February 5, 2013, in the phone call with Ms. Parrish, Ms. Parrish stated to Decedent Hartwig that she would see him on Thursday for court and Decedent Hartwig stated to Plaintiff Brenda Parrish to not bother coming because he would not be there.

31.     As Decedent Hartwig was incarcerated in the St. Louis County Jail Decedent Hartwig's statement to his mother, Ms. Parrish, that he would not be in court, was affirmatively stating that he was going to kill himself.

32.     After investigation, the Investigation Report noted, "it appears that J. Hartwig had been considering suicide prior to the incident."

33.     On September 1, 2011, prior to being incarcerated in the St. Louis County Jail, Decedent Hartwig had attempted suicide by hanging.

34.     All medical staff of Defendant St. Louis County were aware of Decedent Hartwig's prior September 1, 2011 attempted suicide by hanging as early as November 2, 2012.

35.     Decedent Hartwig was not prescribed any medication or provided any treatment for depression while in the St. Louis County Jail prior to his hanging.

**COUNT I**
**ADA AND REHABILITATION ACT OF 1973**
**42 U.S.C. § 12101 *ET SEQ.* AND 29 U.S.C. § 701 *ET SEQ.***
**PLAINTIFFS A.H., B.H. AND CATLIN DICKERSON**
**AGAINST DEFENDANT ST. LOUIS COUNTY, MISSOURI**
**FOR COMPENSATORY DAMAGES, PUNITIVE DAMAGES**
**AND ATTORNEY'S FEES**

36.     This Count is a claim for disability discrimination against Defendant St. Louis County under 29 U.S.C. § 701 *et seq.*, the "Rehabilitation Act of 1973" and for violating Title II of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (hereinafter the "ADA") which provides in pertinent that:

> "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

37.     Title II of the Act prohibits, among other things:

- limiting a qualified individual's enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service of an agency; and

- subjecting a qualified individual to discrimination under any program or activity conducted by an agency. 28 C.F.R. § 39.130.

38.     Decedent Hartwig was disabled as defined by 42 U.S.C. § 12102 and a "qualified individual" as defined by 42 U.S.C. § 12131(2), as he suffered from depression.

39.     Defendant St. Louis County is a public entity in charge of the St. Louis County Jail that has violated Title II of the ADA.

40.     Defendant St. Louis County owed Decedent Hartwig a non-delegable duty to ensure that his well-being and safety would not be compromised as a result of discrimination based on his disability and thus, Defendant St. Louis County is vicariously liable for the actions

of any and all persons or entities Defendant St. Louis County designated to care for Decedent Hartwig.

41.     Defendant St. Louis County's agents and employees were authorized to act for Defendant St. Louis County when they committed the ADA violations alleged herein.

42.     Defendant St. Louis County's agents and employees accepted the undertaking of acting on behalf of Defendant St. Louis County when they committed the ADA violations alleged herein.

43.     Defendant St. Louis County had control over his agents and employees when they committed the ADA violations alleged herein.

44.     The ADA violations alleged herein and committed by Defendant St. Louis County and the persons and entities charged with caring for Decedent Hartwig, were done while acting within the course and scope of their employ and/or agency with Defendant St. Louis County.

45.     Decedent Hartwig's need for reasonable accommodations was obvious.

46.     Defendant St. Louis County and the persons and entities charged with caring for Decedent Hartwig, knew and/or should have known of Decedent Hartwig's need for reasonable accommodations.

47.     Defendant St. Louis County and the persons and entities charged with caring for Decedent Hartwig, acted intentionally and/or with deliberate indifference to Decedent Hartwig's need for reasonable accommodations as follows:

        a.     Inmates at the St. Louis County Jail were entitled to interact with one another, form friendships, sing, play games, visit, chat, and move at liberty within set bounds, subject only to administrative and disciplinary needs. Persons with disabilities like that suffered by Decedent Hartwig could have enjoyed those benefits except for a lack of treatment and adequate supervision;

b.      Inmates at the St. Louis County Jail were entitled to enjoy physical comforts, like games, books, radios, access to canteen, frequent showers, visits, and phone calls, subject only to administrative and disciplinary needs. Persons with disabilities like that suffered by Decedent Hartwig could have enjoyed those benefits except for a lack of treatment and adequate supervision;

c.      Inmates at the St. Louis County Jail were entitled to enjoy educational facilities, including a library, writing materials, study aids, and educational programs, subject only to administrative and disciplinary needs. Persons with disabilities like that suffered by Decedent Hartwig could have enjoyed those benefits except for a lack of treatment and adequate supervision;

d.      Inmates at the St. Louis County Jail were entitled to enjoy religious activities, including chapel, study groups, religious materials, icons and observances, subject only to administrative and disciplinary needs. Persons with disabilities like that suffered by Decedent Hartwig could have enjoyed those benefits except for a lack of treatment and adequate supervision;

e.      Inmates at the St. Louis County Jail were entitled to a safe environment, free of known hazards, with adequate sanitation, and removal of traps and obstructions. Persons with disabilities such as those suffered by Decedent Hartwig were exposed to a range of hazards, like fixtures that could support a means of hanging, that endangered life and safety;

f.      Inmates at the St. Louis County Jail were entitled to receive care and treatment that was responsive to their particular health need, including testing, diagnosis, surgery, therapy, and monitoring. Persons who suffered disabilities such as those suffered by Decedent Hartwig received only medication designed to keep them restrained and quiet; and

g.      Inmates at the St. Louis County Jail were entitled to receive security

7

monitoring to protect them from violence at the hands of other inmates and staff. Persons who suffered disabilities such as those suffered by Decedent Hartwig were known to be subject to violence at their own hand and yet received infrequent security monitoring and inadequate protection.

48.    As a direct and proximate result of the refusal and failure of Defendant St. Louis County and its agents and employees charged with caring for Decedent Hartwig, to provide him with accommodations for his disability, the satisfaction of common needs necessary to a decent life, he suffered the agony of prolonged isolation, loneliness, and despair and was thus driven to suicide.

## Compensatory Damages

49.    Under 42 U.S.C. § 12101 et seq., Plaintiffs A.H., B.H. and Catlin Dickerson are entitled to an award of compensatory damages against St. Louis County.

## Punitive Damages

50.    Defendant St. Louis County and its agents and employees' actions were:

     a.    Were willful and wanton;

     b.    Showed callous indifference toward the rights of Decedent Hartwig; and

     c.    Were taken in the face of a perceived risk that the actions would violate federal law.

51.    Plaintiffs A.H., B.H. and Catlin Dickerson are entitled to an award of punitive damages against Defendant St. Louis County, in order to punish it and to deter others.

## Attorney's Fees

52.    Under 42 U.S.C. § 12205, if Plaintiffs A.H., B.H. and Catlin Dickerson are the prevailing parties in this litigation, then they will be entitled to receive an award of reasonable attorney's fees, non-taxable expenses and costs.

WHEREFORE, Plaintiffs A.H., B.H. and Catlin Dickerson pray for judgment under 42 U.S.C. § 12101 et seq. against Defendant St. Louis County, Missouri for compensatory damages in a fair and reasonable amount, for punitive damages, for reasonable attorney's fees, for and non-taxable expenses, for costs, and Plaintiffs pray for such other relief as may be just under the circumstances and consistent with the purpose of 42 U.S.C. § 12101 et seq.

Respectfully submitted,

SCHOTTEL & ASSOCIATES, P.C.

BY: s/*James W. Schottel, Jr.*
    James W. Schottel, Jr.   #51285MO
    906 Olive St., PH
    St. Louis, MO 63101
    (314) 421-0350
    (314) 421-4060 facsimile
    jwsj@schotteljustice.com

    Attorney for Plaintiffs
    A.H.
    B.H.
    Catlin Dickerson