IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| A.H., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 4:16-CV-509 CDP |
| | ) | |
| COUNTY OF ST. LOUIS, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS**

In Reply to Plaintiffs' Memorandum in Opposition to Defendant St. Louis County, Missouri's Motion to Dismiss, Defendant St. Louis County provides the following.

**II. Matters Outside the Pleadings**

Plaintiffs point out that defendant submitted matters outside the pleadings, namely pleadings and rulings from the public court file in another case plaintiffs filed. Rule 12(b)(6) motions are not automatically converted into motions for summary judgment, however simply because one party submits additional matters in support of or opposition to the motion. *See Martin v. Sargent,* 780 F.2d 1334, 1336–37 (8th Cir.1985). Some materials that are part of a public record or do not contradict the complaint may be considered by a court in deciding a Rule 12(b)(6) motion to dismiss. *See Papasan v. Allain,* 478 U.S. 265, 268 n. 1 (1986). In *State ex rel. Nixon v. Coeur D'Alene Tribe,* 164 F.3d 1102, 1107 (8th Cir. 1999), the court's consideration of pleadings in a related lawsuit by the same parties did not transform a motion to dismiss into a motion for summary judgment.

Regardless, defendant raised two bases in support of its Rule 12(b)(6) motion, only one of which refers to material contained in the public record developed in the case before Judge

1

Jackson. Defendant submits that it should not even be necessary for the Court to review outside material because St. Louis County relies on both grounds for its dismissal.

Finally, plaintiffs state that if the Court is inclined to treat the motion as a Rule 56 motion for summary judgment, they should be afforded reasonable opportunity to present all the materials pertinent to the motion. Plaintiffs do not deny that the material defendant submitted is genuine, or included within the public court file. Nor do they assert that additional discovery is necessary, or explain what else they may need to present in opposition to the motion. The issue is strictly a legal one, ripe for determination now, without additional protracted litigation.

### III. Plaintiffs Have Not Sufficiently Pled ADA or Rehabilitation Act Claims

Plaintiffs argue that defendant engaged in "cherry-picking" by describing the claim as nothing more than failure to treat Mr. Hartwig's depression, and then refer to ¶¶47(a) through 47(g) for a complete description of their actual claims. Paragraphs 47 (a) through (d) list activities and conditions that are allegedly accessible to inmates in general, such as interacting with other inmates, physical comforts, educational facilities, and religious activities. Plaintiffs do not assert that the activities or conditions were unavailable to Mr. Hartwig; rather they allege he could not benefit from them due to "lack of treatment and adequate supervision." Plaintiffs then allege in ¶47(e) that Mr. Hartwig was exposed to fixtures that could support a means of hanging, and in ¶47(g) that he was not given sufficient monitoring to protect him from violence by his own hands. Finally, in ¶47(f), plaintiffs allege that Mr. Hartwig did not receive care or treatment responsive to his particular medical need. The allegations plaintiffs specifically point to indeed confirm that defendant's characterization of the claim is accurate. Plaintiffs allege either that Mr. Hartwig was deprived of appropriate treatment for his depression, or that the County failed to protect him from harming himself, which is analyzed as a claim for inadequate

medical treatment as a matter of law. *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006); *Hott v. Hennepin Cnty, Minn.,* 260 F.3d 901, 905 (8th Cir.2001). The accommodations plaintiffs assert Mr. Hartwig required are treatment for his depression, and measures to protect him from committing suicide.

The inclusion of the allegation that Mr. Hartwig could not benefit from the various activities listed in ¶¶47(a) through (d) because he was not given adequate supervision cannot save the lawsuit. A complaint must contain sufficient factual matter to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009); *Ritchie v. St. Louis Jewish Light,* 630 F.3d 713, 716 (8th Cir. 2011). Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 536 U.S. at 579. Plaintiffs have not included facts in the Complaint to explain how increased supervision would serve to accommodate Mr. Hartwig's depression so that he would be capable of partaking in matters available to the general population of inmates, such as interacting with others, forming friendships, physical comforts, and educational and religious activities . Such facts are necessary to render the claim plausible. Defendant asks the Court to exercise its common sense, and hold that the allegation of inadequate supervision does not create a plausible cause of action.

Plaintiffs accuse defendant of failing to read the Complaint as whole as required by *Zolteck Corp. v. Structural Polymer Group,* 592 F.3d 893, 896 n. 4 (8th Cir. 2010). The *Zolteck*, Court affirmed the district court's dismissal of a lawsuit because the plaintiff failed to plead a cause of action that was plausible. The court noted: "[a] claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 896, citing *Twombly,* 550 U.S. at 556. Defendant submits that a review of the allegations as a whole do not reveal a plausible cause of action under the law.

Plaintiffs do not attempt to distinguish *Shelton v. Arkansas Dept. of Human Services,* 677 F.3d 837 (8th Cir. 2012), which is directly on point. The court refused to apply the ADA and the Rehabilitation Act to the decision to remove a patient from suicide watch. There, the administratrix of the estate of a patient who committed suicide in a state hospital attempted to extend the ADA and Rehabilitation Act to what amounted to a treatment decision by alleging that the suicide resulted from the decedent's placement in an inappropriate facility.[1] The *Shelton* Court held that a plaintiff cannot escape a motion to dismiss ADA and Rehabilitation Act claims by couching medical treatment accommodations in different terms. The plaintiffs here seek to avoid dismissal through allegations the *Shelton* Court held were insufficient.

**IV. The Merits of the Complaint Have Not Been Previously Adjudicated**

Plaintiffs are correct that Judge Jackson did not rule on the merits of the ADA/Rehabilitation Act claim (which is not contrary to what defendant included in its Memorandum of Law in Support of its Motion to Dismiss). The litigation is advanced in its proceedings. Discovery closed on April 1, and defendants filed their Motion for Summary Judgment on April 22 as to all parties and all claims. The case is set for trial on September 6, 2016. Upon further review of the case law, defendant agrees that cause of action splitting may not technically apply to the situation at hand because a final decision on the merits has yet to be

---

[1] A more detailed description of the allegations is included in the Opinion and Order of the District Court, *Shelton v. Arkansas Dept. of Human Services,* 2011 WL 1193026 (E.D. Ark. March 29, 2011).

rendered. *Carney v. Ford Motor Co.,* 657 F.2d 230 (8th Cir. 1981). The reasons behind the doctrine fully apply here, however. If the Court denies defendant's Motion to Dismiss, then alternatively defendant asks the Court to stay the instant lawsuit until the claims in Judge Jackson's court have been fully resolved for the following reasons.

Federal law embodies policy which precludes splitting a cause of action. *Friez v. First American Bank & Trust of Minot,* 324 F.3d 580, 581 (8th Cir.2003) ("Res judicata prevents the splitting of a single cause of action **a**nd the use of several theories of recovery as the basis for separate lawsuits.") *See also Bankers Life & Cas. Co. v. Kirtley,* 338 F.2d 1006 (8th Cir.1964); *Guettel v. United States,* 95 F.2d 229 (8th Cir.1938). "The doctrine prevents harassment of parties by repetitive litigation, conserves judicial resources, and prevents diminishment of the prestige of the courts by minimizing inconsistent decisions." *Roach v. Teamsters Local Union No. 688,* 595 F.2d 446, 450 (8th Cir. 1979).

Defendant submits that an alternative to dismissing the lawsuit for failure to state a claim is to stay the instant lawsuit pending resolution of the matters before Judge Jackson. A stay will accomplishes the policy objectives mentioned above regarding piecemeal litigation, conservation of judicial resources, and avoidance of harassing and repetitive lawsuits against a defendant. "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clifton v. Jones,* 520 U.S. 681, 706 (1997).

If defendant prevails in the lawsuit before Judge Jackson, it is likely that plaintiffs' claims will be barred under the doctrine of res judicata and by cause of action splitting. Because defendant has already engaged in lengthy and protracted discovery and litigation with plaintiffs in the matter before Judge Jackson, because a resolution of the claims is expected by September, and because of judicial economy, a stay is indicated.

The Court in *Poe v. John Deere Co.,* 695 F.2d 1103 (8th Cir. 1982), discussed in detail the principles of res judicata, and a test to determine identity of claims. The court noted that a new theory of recovery will not preclude the application of res judicata. "Final judgment on the merits precludes the relitigation of a claim on any grounds raised before or on any grounds which could have been raised in the prior action. . . . Having failed to recover on one theory of recovery, a litigant cannot attempt to relitigate the same claim under a different theory of recovery." *Id.* at 1105 (citations omitted).

In ascertaining whether plaintiffs seek to relitigate the same claim, the court looks to whether proof of the same facts will support both actions, or to whether the wrong for which redress is sought is the same in both actions. *Id.* at 1106; *Woodbury v. Porter,* 158 F.2d 194, 195 (8th Cir.1946). The Eighth Circuit has used the test in the Restatement (Second) of Judgments §21(1) (1982) for guidance, which provides:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ... the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

Restatement (Second) of Judgments § 24(1) (1982). The term "transaction" connotes a common nucleus of operative facts.

> (2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

*Id.* at § 24(2). Furthermore, the Eighth Circuit "has favored a broad approach in recognition of the salutary purposes of res judicata of finality of judgments and the avoidance of piecemeal litigation." *Roach,* 598 F.2d at 449.

Plaintiffs seek to recover for a single claim under the above tests in both lawsuits. A majority of the facts alleged in both lawsuits are identical. The counts asserted in both lawsuits form a convenient trial unit, and meet the parties' expectations of being raised together as demonstrated by plaintiffs' three separate attempts to raise the ADA/Rehabilitation Act theories before Judge Jackson. Plaintiffs further seek to recover for the same alleged harm. They assert in ¶48 of the pending Complaint that Decedent Hartwig "suffered the agony of prolonged isolation, loneliness, and despair and was thus driven to suicide." According to ¶47, the harm was due to inadequate treatment, inadequate supervision, exposure to fixtures that could support a means of hanging, and inadequate monitoring to protect Mr. Hartwig from harming himself. They allege in Count III of "Plaintiff's First Amended Complaint" that was filed on November 13, 2014 before Judge Jackson that defendant was deliberately indifferent to the needs of suicidal inmates because it failed to assess those at risk, to closely observe suicidal inmates, to provide psychiatric care, and to provide a safe environment where inmates were not given material with which to hang themselves. Judge Jackson dismissed Count IV for failure to state a claim. Count V is a supplemental state law claim for wrongful death, where plaintiffs allege that the County failed to monitor and treat Mr. Hartwig's mental health condition, including feelings of isolation, rejection, unworthiness, fear, lack of exercise, fresh air, friendship, good diet, and physical well-being. A comparison of the allegations in both lawsuits directed toward St. Louis County establishes that the suits are based on the same claim as a matter of law. That the theories of recovery are different is not an impediment to res judicata. *Poe,* 695 F.2d at 1105.

That Judge Jackson ruled that it was too late for plaintiffs to assert their ADA/Rehabilitation Act theory is of no moment. In *Poe,* the refusal of the court to permit an

7

amendment to the complaint because it was filed late in the process was nonetheless given res judicata effect.

Plaintiffs argue the claims are different because they sue as individuals before Judge Jackson, while they are heirs in the matter before this Court. Regardless of the capacity in which they sue, the three named plaintiffs in the instant lawsuit are plaintiffs in the lawsuit pending before Judge Jackson. Res judicata, however applies not only to the named parties, but also to those in privity with the parties. *Nolles v. State Committee for Reorganization of School Districts,* 524 F.3d 892, 902 (8th Cir. 2008). Plaintiffs are also represented by the same counsel.

Plaintiffs next maintain that the inclusion of three individually named defendants in Counts I and V of the Judge Jackson lawsuit is sufficient to save them. Defendant County, however only asks this Court to compare the allegations directed toward it in both lawsuits. Plaintiffs have not cited any authority to support their position that a cause of action splitting/res judicata argument is defeated by naming additional parties in one lawsuit, and defendant knows of no such precedent.

Plaintiffs go on to claim that the factual basis for the case is separate and distinct from that before Judge Jackson. A comparison of the pleadings as discussed above, however, establishes that plaintiffs sue for the same legal claim in both actions.

Finally, plaintiffs assert that the County does not have a basis to complain about defending separate lawsuits because it asked Judge Jackson to dismiss the ADA/Rehabilitation Act claim. The objection defendant has to separate lawsuits is that it engaged in substantial discovery, worked up the case, and briefed the issues that Judge Jackson permitted to go forward. Defendant is prejudiced by repetitive litigation. Whether defendant objected to the

ADA/Rehabilitation Act claims before Judge Jackson is irrelevant to whether the instant lawsuit is subject to res judicata and constitutes cause of action splitting.

Whether or not the Court enters a stay will not affect the application of the res judicata/cause of action splitting defense to the instant lawsuit. The availability of the defense will be determined once Judge Jackson enters a judgment. A stay will, however, work to prevent harassment of parties by repetitive litigation and conserve judicial resources. For these reasons, should the Court deny the Motion to Dismiss for Failure to State of Claim, then a stay pending the outcome of the matter before Judge Jackson is appropriate.

**V. Conclusion**

Therefore, for all of the above stated reasons, Defendant St. Louis County asks the Court to grant its Motion to Dismiss, and dismiss plaintiffs' Complaint with prejudice. Alternatively, defendant asks the Court to stay the lawsuit until the resolution of the lawsuit before Judge Jackson.

PETER J. KRANE
COUNTY COUNSELOR

By:    /s/ Priscilla F. Gunn
Priscilla F. Gunn    #29729MO
Assistant County Counselor
Michael E. Hughes    #23360MO
Lawrence K. Roos Bldg.
41 So. Central Avenue
Clayton, MO. 63105
314-615-7042; Fax 314-615-3732
pgunn@stlouisco.com
mhughes2@stlouisco.com
Attorneys for Defendant
St. Louis County

CERTIFICATE OF SERVICE

I certify that a copy of this document was sent by the Court's electronic filing system this 20th day of June, 2016 to all attorneys of record.


    Priscilla F. Gunn